Citation Nr: 1829329 
Decision Date: 05/25/18 Archive Date: 06/12/18

DOCKET NO. 13-13 623 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to a rating in excess of 10 percent, prior to January 12, 2016, and in excess of 40 percent thereafter, for a low back disability.

2. Entitlement to service connection for a bilateral foot disorder, to include bilateral degenerative joint disease of the first metatarsophalangeal joint, pes planus, and plantar fasciitis.

REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

J. Lee, Associate Counsel


INTRODUCTION


The Veteran served on active duty in the United States Marine Corps from July 1990 to June 1991.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2011 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

In June 2015, the Veteran testified before the undersigned during a Travel Board hearing held at the Nashville RO. A transcript of the hearing is associated with the record.

In a January 2016 rating decision, the RO assigned a 40 percent rating for a low back disability under Diagnostic Codes 5242-5237, effective January 12, 2016. As this is not considered a full grant of the benefits sought on appeal and the Veteran has not withdrawn this issue, it is still before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

In June 2017, the Board remanded these issues for additional development, which has been substantially completed. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. For the period prior to January 12, 2016, the Veteran's low back disability was manifested by range of motion measurement of forward flexion to 60 degrees, at worst; extension to 20 degrees, at worst; and a combined range of motion to 220 degrees, at worst. Additionally, his low back disability was manifested by objective evidence of pain on motion; tenderness; and scoliosis.

2. For the period prior to January 12, 2016, the Veteran's low back disability was not manifested by flare-ups, muscle spasm, localized tenderness, guarding, weakness, or ankylosis.

3. For the period from January 12, 2016, the Veteran's low back disability was manifested by range of motion measurement of forward flexion to 25 degrees, at worst; extension to 10 degrees, at worst; and a combined range of motion to 105 degrees, at worst. Additionally, his low back disability was manifested by pain that did not result in or cause functional loss; muscle spasm and localized tenderness that did not result in abnormal gait or spinal contour; and arthritis confirmed by x-ray.

4. For the period from January 12, 2016, the Veteran's low back disability was not manifested by guarding, Intervertebral Disc Syndrome (IVDS), ankylosis, or any other neurologic abnormalities.

5. The Veteran's foot disorders did not begin in service or shortly after service. Instead, the Veteran's foot disorders manifested many years after service, with no continuity of symptomatology, and it is otherwise not related to service.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent rating for a low back disability for the period prior to January 12, 2016, have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 3.159, 4.1-4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2017).

2. The criteria for a rating in excess of 40 percent rating for a low back disability for the period from January 12, 2016, have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 3.159, 4.1-4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5242-5237 (2017).

3. The criteria for service connection for a bilateral foot disorder have not been met. 38 U.S.C. §§ 1131, 5103, 5103A (West 2012); 38 C.F.R. §§ 3.102, 3.303, 3.309, 3.310 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Low Back Disability

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where, as here, entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). 

Staged ratings are appropriate for any rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. See Francisco, 7 Vet. App. at 58; Hart, 21 Vet. App. at 505. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. 
§ 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3.

It is possible for a Veteran to have separate and distinct manifestations from the same injury that would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); 38 C.F.R. § 4.14 (2011) (precluding the assignment of separate ratings for the same manifestations of a disability under different diagnoses).

Where functional loss due to pain on motion is alleged, 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). A finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997). The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011). As required by 38 C.F.R. § 4.59, joints should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing, and if possible, with the range of opposite undamaged joint. Correia v. McDonald, No. 13-3238, 2016 WL 3591858 (Vet. App. July 5, 2016). The evaluation of the same disability under various diagnoses, known as "pyramiding," is to be avoided. 38 C.F.R. § 4.14.

I. Period prior to January 12, 2016

For the period prior to January 12, 2016, the Veteran was evaluated at a 10 percent disability rating under Diagnostic Code 5237. Diagnostic Code 5237 pertains to lumbosacral strain. See 38 C.F.R. § 4.71a, Diagnostic Code 5237.

Diagnostic Code 5237 indicates that the spine condition should be evaluated under the General Formula for Diseases and Injuries of the Spine (General Formula). 38 C.F.R. § 4.71a, Diagnostic Codes 5237. 

Under the General Formula, a 10 percent disability rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a, General Formula. 

A 20 percent disability rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; combined range of motion of the thoracolumbar spine not greater than 120 degrees; combined range of motion of the cervical spine not greater than 170 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. 

A 30 percent disability rating is assigned for forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine. Id. 

A 40 percent disability rating is assigned for unfavorable ankylosis of the entire cervical spine; forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. Id. 

A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. Id. Objective neurologic abnormalities, if any, must be evaluated separately, under an appropriate diagnostic code. Id. at Note (1). 

For VA compensation purposes, the normal findings for range of motion (ROM) of the thoracolumbar spine are flexion to 90 degrees, extension to 30 degrees, lateral flexion, both right and left, to 30 degrees, and rotation, both right and left, to 30 degrees. 38 C.F.R. § 4.71a, Plate V.

The Veteran has been in receipt of a 10 percent disability evaluation for his back since June 1991. In May 2010, he filed the current claim for an increase in the disability evaluation. Based upon the claim, the relevant appellate period runs from May 2009 to the present.


In June 2010, the Veteran underwent a MRI for his lumbosacral spine. It showed central and right paracentral disk protrusion with annular tear at the L5-S1, and contact with the descending right side S1 nerve. VA treatment records developed between 2009 and 2016 show complaints of, treatment for, and diagnoses of chronic low back pain.

In December 2010, the Veteran was afforded a VA examination. The Veteran reported he had been unemployed from his occupation as a minister for one to two years, as he was planning on attending the Atlanta Institute of Music. With respect to functional impairment posed by his low back disability, the examiner opined that the Veteran may not tolerate prolonged or repetitive bending, stooping, or heavy carrying or lifting. The Veteran was observed to have a normal gait. Although the Veteran was found to have scoliosis, he did not have cervical spine ankylosis or thoracolumbar spine ankylosis.

The examiner performed ROM testing. Forward flexion was to 75 degrees; extension to 25 degrees; right and left later flexion to 30 degrees; and right and left lateral rotation to 30 degrees. The Veteran's combined ROM was 220 degrees. There was objective evidence of pain on active ROM and following repetitive motions. There were no additional limitations after three ROM repetitions. No muscle spasm, localized tenderness or guarding severe enough to be responsible for abnormal gait or abnormal spinal contour was found. Pain with motion and tenderness was reported. The examiner did not find spasm, atrophy, guarding, or weakness. The examiner found the Veteran suffered from mechanical low back pain with mild scoliosis. 

Despite the Veteran's reported symptoms, the record does not support a finding that his disability picture more nearly approximated that associated with a 20 percent rating prior to January 12, 2016, even upon consideration of the impact of the DeLuca factors with repeated motion and on flare-ups. The Veteran meets the requirements for a 10 percent rating, and no greater. Although the Veteran was found to have objective evidence of pain during initial and repetitive motion ROM testing and reported functional loss due to pain impacting certain occupational activities such as repetitive stooping or bending, and carrying heavy things, a 10 percent evaluation adequately portrays any functional impairment that the Veteran experienced as a consequence of his low back disability prior to January 12, 2016. No impaired flexion to less than 60 degrees is described or measured, and no abnormal gait is shown. The Veteran did report low back pain in VA treatment, but no additional limitations after three repetitions of ROM were found, and no flare-ups were found or reported. It follows that even when considering functional loss due to factors such as pain and flare-ups, a 10 percent evaluation adequately portrays any functional impairment that the Veteran experienced as a consequence of his low back disability, prior to January 12, 2016. 

There is additionally no indication of any compensable or chronic neurological impairment related to the low back over this period, which could be rated separately under the General Rating Formula for Diseases and Injuries of the Spine. 

II. Period from January 12, 2016

For the period from January 12, 2016, the Veteran was evaluated at a 40 percent disability rating under Diagnostic Codes 5242-5237.

Hyphenated diagnostic codes are used when a rating under one code requires the use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27. Diagnostic Code 5242 applies to degenerative arthritis of the spine. See 38 C.F.R. § 4.71a, Diagnostic Code 5242. As noted above, Diagnostic Code 5237 applies to lumbosacral strain. Both Diagnostic Codes 5242 and 5237 are evaluated under the General Formula for Diseases and Injuries of the Spine (General Formula), so the criteria used for the Veteran's increased rating claim will not differ for the periods prior to and from January 12, 2016. 38 C.F.R. § 4.71a, Diagnostic Codes 5237, 5242. 

In January 2016, the Veteran was afforded another VA examination. No flare-ups were reported by the Veteran. The Veteran reported that he experienced functional loss due to his low back disorder. He was employed as a supervisor of the packing department, and reported difficulty with lifting, and felt a lot of pain when he had to pick up or bend over. The examiner opined that the Veteran's low back had a functional occupational impact as he experienced difficulty with lifting.

The examiner performed ROM testing. Initial ROM testing yielded abnormal results, as follows: forward flexion to 25 degrees; extension to 10 degrees; right lateral flexion to 15 degrees; left lateral flexion to 20 degrees; right lateral rotation to 15 degrees; and left lateral rotation to 20 degrees. The Veteran's combined ROM was 105 degrees. According to the examiner, ROM contributed to functional loss because of instability. Although pain was noted on the examination, it did not result in or cause functional loss. The Veteran was able to perform repetitive use testing with at least three repetitions with no additional loss of function or ROM. He was not examined immediately after repetitive use over time and as such, the exam was neither medically consistent or inconsistent with the Veteran's statements describing functional loss with repetitive use over time. Pain, weakness, fatigability, or incoordination did not significantly limit functional ability with repeated use over a period of time.

There was objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue in the lower spine. There was no guarding, ankylosis, IVDS, or other neurologic abnormalities of the thoracolumbar spine. Although the examiner found muscle spasm and localized tenderness, it did not result in abnormal gait or abnormal spinal contour. Arthritis was documented via x-ray of the thoracolumbar spine. However, no thoracic vertebral fracture with loss of 50% or more of height was found.

VA treatment records from September 2015 to July 2017 show complaints of and treatment for low back pain. In January 2017, the Veteran was observed to have normal gait; full range of motion of all extremities; no joint effusions or deformities; no spinous process or paraspinal tenderness; and good lumbar flexion. 

In July 2017, the Veteran was afforded another VA examination. The Veteran did not endorse flare-ups. He reported functional loss due to burning and sharp pain in his lower back. The examiner reported that the Veteran was impacted functionally as he is unable to perform occupational duties requiring repetitive bending, stooping, or lifting. However, the Veteran was otherwise capable of active sedentary employment other than these limitations.

The examiner performed ROM testing. Initial ROM testing yielded abnormal results, as follows: forward flexion to 45 degrees; extension to 20 degrees; right and left lateral flexion to 20 degrees; and right and left lateral rotation to 25 degrees. The Veteran's combined ROM was 155 degrees.

Additional Correia ROM testing was done to include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing. ROM under all four categories resulted as follows: forward flexion to 40 degrees; extension to 20 degrees; right and left lateral flexion to 20 degrees; and right and left lateral rotation to 25 degrees. 

ROM contributed to functional loss because of decreased movement of the spine. There was no pain noted on examination and no evidence of pain with weight-bearing. The Veteran was able to perform repetitive use testing with at least three repetitions with no additional loss of function or ROM. He was not examined immediately after repetitive use over time and as such, the exam was neither medically consistent or inconsistent with the Veteran's statements describing functional loss with repetitive use over time. The examiner was unable to say without mere speculation whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over a period of time, and he noted that he would have to examine the Veteran in the future to opine on this.

There was no objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue of the back. No guarding or muscle spasm of the thoracolumbar spine; ankylosis; other neurologic abnormalities; or IVDS was found. Arthritis was documented via x-ray but it did not show vertebral fracture with a loss of 50 percent or more of height.

After review of the pertinent evidence discussed above, for the period from January 12, 2016, the Board finds that the evidence is against assigning a rating in excess of 40 percent. Specifically there is no evidence of unfavorable ankylosis of the entire thoracolumbar spine, as the Veteran was never found to have any ankylosis. The Veteran's 40 percent disability rating from January 12, 2016 is appropriate as the Veteran's forward flexion measured below 30 degrees in his January 2016 VA examination.

In regards to DeLuca, as in this case, a musculoskeletal disability is evaluated at the highest rating available based upon limitation of motion, further DeLuca analysis is foreclosed. Johnston v. Brown, 10 Vet. App. 80 (1997). Here, the Veteran has been in receipt of a 40 percent rating for his low back disability from January 12, 2016. Forty percent is the highest schedular rating available based on limitation of motion.

As Diagnostic Code 5242 pertains to degenerative arthritis of the spine, Diagnostic Code 5003 should also be considered when evaluating the Veteran's disability rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5242 (noting to see also Diagnostic Code 5003). Under Diagnostic Code 5003, arthritis is rated on the basis of the limitation of motion of the affected joint. When the limitation of motion of the affected joint is noncompensable under the appropriate diagnostic code, a rating of 10 percent is applied to each affected major joint. See 38 C.F.R. § 4.71(a), Diagnostic Code 5003. For the purpose of rating a disability from arthritis, the lumbar vertebrae are considered a group of minor joints, ratable on parity with major joints. 38 C.F.R. § 4.45(f). As explained above, the Veteran's arthritis is compensable under Diagnostic Code 5242-5237, and as such, Diagnostic Code 5003 will not be considered further as pyramiding is not permitted. 

For both periods on appeal, the Board has considered the Veteran's statements regarding his pain and discomfort, as well as the impact that his back disability has had on his activities of daily living. The Veteran is certainly competent to describe his observations, and the Board finds no reason to doubt the Veteran's reports regarding pain and the impact of pain. In this case, however, the competent medical evidence offering detailed specific specialized determinations pertinent to the rating criteria are the most probative evidence with regard to evaluating the pertinent symptoms for the disability on appeal; the medical evidence also largely contemplates the Veteran's descriptions of symptoms. The lay testimony has been considered together with the probative medical evidence clinically evaluating the severity of the pertinent disability symptoms.

Again, there is additional no indication of any compensable or chronic neurological impairment related to the low back over this period, which could be rated separately under the General Rating Formula for Diseases and Injuries of the Spine. 

In denying further separate or higher ratings, the Board has considered the applicability of the benefit of the doubt doctrine. However, as preponderance of the evidence is against such aspects of the Veteran's claim, that doctrine is not applicable. See 38 U.S.C. § 5107, 38 C.F.R. § 4.3, 4.7.

Bilateral Foot Disability

The Veteran seeks service connection for a bilateral foot disability. He contends that he injured himself in an obstacle course during basic training. 

The Veteran was diagnosed with various foot disorders, including bilateral degenerative joint disease of the first metatarsophalangeal joint, pes planus , and plantar fasciitis, during the course of this appeal. As such, the current disability element is established. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Thus, the outcome turns upon whether there is evidence of an event, injury, or disease in service, and, if so, evidence of a nexus between the claimed in-service disease or injury and the present disability. Id.

The Veteran's service treatment records are silent for any foot related complaints or treatment. Prior to the Veteran's separation, he was given an examination for a medical discharge due to his low back disorder. The examining physician found the Veteran was physically normal for his age, with the exception of his low back disorder, and did not find or notate any issues with the Veteran's feet. Additionally, the Veteran did not report any foot issues during this examination.

In August 1991, around a month after the Veteran's separation, he was afforded a VA examination for his low back disorder. As part of the physical examination, the examiner looked at the Veteran's feet and found that his bilateral dorsalis pedis and posterior tibial pulses were 2 plus or normal. Neither of his feet was swollen.

The Veteran's VA treatment records from January 2001 to July 2017 show complaints of and treatment for foot pain. Treatment included receiving arch support and orthotics to alleviate foot pain.

In January 2016, the Veteran was afforded a VA examination for his feet. He was diagnosed with bilateral plantar fasciitis and bilateral degenerative arthritis. The examiner opined that the Veteran's bilateral foot disorder was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. Combined with his physical examination, the examiner found no evidence in the Veteran's service treatment records for a foot condition or treatment; and his medical discharge evaluation, as noted above, contained no mention of feet problems.

In July 2017, the Veteran was afforded another VA examination. He was diagnosed with bilateral plantar fasciitis and bilateral degenerative arthritis. The Veteran described functional loss or functional impairment in his feet as burning, hurting, and stiffness of his feet. He reported pain in both feet accentuated by use.

The examiner opined that the Veteran's bilateral foot disorders are less likely than not due to or secondary to military service as there is no evidence showing that these conditions incurred in or were caused by foot pain during service. He acknowledged the Veteran's assertions during his June 2015 hearing that the Veteran's foot pain began after running, jumping, toting heavy bags on his back, the obstacle course, and parade desk drills were the etiology of the Veteran's foot disorders. The examiner opined that these activities alone would be less likely than not the etiology of the Veteran's foot conditions. As the remaining assertions by the Veteran were subjective and not objective evidence, the examiner concluded that there was no relation between the assertions and the etiology of the Veteran's conditions.

The Board has also considered the Veteran's statements regarding symptoms such as the pain. The Board notes the Veteran is clearly competent to report observable symptomatology. However, the probative medical evidence outweighs any competent lay statements in this case.

In light of the evidence above, including the Veteran's service treatment records, VA treatment records, and lay statements, the Board finds that the bilateral foot disorder is not related to service. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R.§ 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). In this case, arthritis (which has been noted in the Veteran's feet) is one of the diseases listed under 38 C.F.R. § 3.309(a) and, thus, service connection may be established simply based on a showing of continuity of symptomatology.

The Board finds that the Veteran is not entitled to presumptive service connection for a foot disorder. There is no indication that any arthritis in his feet developed to a compensable degree within one of his June 1991 discharge from service. 

Nor has entitlement to service connection on a direct basis been established. His service treatment records, which appear to be complete, do not show treatment for or complaints of a foot condition, and the examination for his medical discharge did not find any foot problems. Significantly, VA examinations that considered the service treatment records, the Veteran's statements and the medical evidence of record, opined that any diagnosed foot disorders were not related to the Veteran's period of service. These opinions carry substantial probative weight. 
Again, the Board has considered the applicability of the benefit of the doubt doctrine. However, as preponderance of the evidence is against such aspects of the Veteran's claim, that doctrine is not applicable. See 38 U.S.C. § 5107, 38 C.F.R. 
§ 4.3, 4.7.


ORDER

A rating in excess of 10 percent, prior to January 12, 2016, and in excess of 40 percent thereafter, for a low back disability is denied.

Service connection for a bilateral foot disorder, to include bilateral degenerative joint disease of the first metatarsophalangeal joint, pes planus , and plantar fasciitis is denied.




____________________________________________
L. M. BARNARD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs